## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

————————————————————
                                            :
VINCENZA LEONELLI-SPINA,                    :
                                            :          Civil Action No.  09-1864 (PGS)
                   Appellant,               :
                                            :
          v.                                :                  OPINION
                                            :
JAMES R. ALBRO,                             :
                                            :
                   Appellee,                :
————————————————————:


     Debtor, Vincenza Leonelli-Spina ("Spina") filed this appeal from the Bankruptcy Court's Order concluding that Spina's debt to John R. Albro ("Albro") was non-dischargeable.  Spina claims that the Bankruptcy Court erred in granting summary judgment because the Bankruptcy Judge failed to undertake a full evidentiary hearing to determine whether the debt was based on fraud or defalcation.

## I. BACKGROUND

     There are two Superior Court of New Jersey cases involved in the outcome of this bankruptcy appeal.

     A.     <u>Paramus Litigation</u>

     On or around December 1994, Albro, a 25 year veteran police officer filed suit against his employer, Borough of Paramus (the "Borough").  *Albro v. Borough of Paramus*, Superior Court of New Jersey, Law Division, Docket No. BER-L-1537-96. ("Paramus Litigation"). Evidently, Albro applied for and accepted an early retirement package the Borough had offered. The offer provided a 30 day period in which an applicant could rescind or revoke his retirement

application.  Thereafter, Albro rescinded his application within the time period, but the Borough refused to accept his revocation.

Due to the Borough's refusal, Albro retained an attorney, John Feczko, to represent him in the matter. At that time, Spina was an associate in Feczko's law firm.  No retainer agreement was signed, but Feczko and Spina orally agreed to take Albro's case on a contingency basis, or accept a fee awarded by the Court against the Borough.

Thereafter, the Division of Pensions of the State of New Jersey ("Pensions") began issuing pension checks to Albro. A representative of Pensions advised Albro that if the checks were cashed, Pensions would consider him retired, which, in turn, would undermine his claim for reinstatement.  As a result of the advice, commencing in 1996, Albro endorsed the checks over to Feczko "as trustee," and the monies were placed into a trust account by the Feczko firm. At some point in late 1996, Spina terminated her employment with Feczko in order to start her own practice.  Upon termination, Spina undertook Albro's case as part of her newly created practice.

Spina claims Albro signed a three page legal services agreement in December 1996, authorizing Spina to draw on the trust account for legal fees and costs at the rate of $250 per hour on the Paramus Litigation.  Albro denies  same, but concedes that he may have signed a one page agreement in 2002 (after the Paramus Litigation was over), which he admittedly did not read because he did not have his reading glasses and he trusted that Spina would not deceive him.

In September 4, 2001, a consent judgment between the Albros and the Borough was entered.  The settlement included a retroactive promotion for Albro from lieutenant to captain effective December 31, 1993, and that Albro's retirement was effective as of January 1, 1995. Albro agreed to receive back wages and an increased pension that reflected his promotion,

payment for sick leave and other miscellaneous benefits, plus $270,000 from the Borough for release of other claims. In addition, the Borough agreed to pay $165,000 by consent order of Albro's attorneys fees and costs.

      B.    <u>Spina Litigation</u>

After the Paramus Litigation, a second lawsuit arose involving the relationship of Spina and Albro. As noted above, Albro understood that the Consent Order awarded $165,000 was for the total legal fee due Spina during the course of the Paramus Litigation, Albro claims that he never received a bill from Spina, and never authorized Spina to withdraw money from the trust account. Much to Albro's surprise, Spina accessed the trust account and withdrew fees. Albro claims he would have refused the settlement in the Paramus Litigation had he known of Spina's activity. The amount taken from the trust account was for fees in addition to the $165,000 award. Albro demanded that Spina turn over the money in the trust account when he learned that the money belonged to him. Spina refused because she had withdrawn all the money to pay herself for Albro's representation. As a result, Albro filed a lawsuit against Spina. *Albro v. Vincenza Leonelli-Spina*, Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-1277-04 ("Spina Litigation").

On February 20, 2004, Albro filed a four count complaint against Spina. The complaint included facts about (a) Spina's failure to pay taxes on the monies in the trust account which Spina negligently failed to do; (b) her failure to provide accounting and bookkeeping of the funds in the trust account; and (c) her improper withdrawal of trust funds without Albro's permission. These activities were plead as breach of contract and negligence.[1]

---

[1]    Spina filed a counterclaim for approximately $36,000 for legal fees that were not paid.

In a post-trial brief, Albro requested the Assignment Judge who heard the matter to find that Spina had engaged in conversion, fraud, breach of fiduciary duty, and breach of contract. Specifically, Albro's attorney revised his allegations to be (a) that Spina fraudulently misappropriated his funds in the trust account, (b) that Spina fraudulently induced him to sign the purported retainer agreement, (c) that Spina breached her fiduciary duty by withdrawing commingled funds in her trust account to pay legal fees, and (d) that Spina breached her contract with Albro by failing to make quarterly estimated tax payments. (A.R. 27). Although those issues were not alleged in the complaint, the Assignment Judge considered them because they had been litigated at trial. N.J. Ct. R. 4:9-2.

The Assignment Judge found that Spina's testimony "completely lacked credibility" for three reasons: inconsistencies between Spina's testimony and the Albros, acknowledged violations of the Rules of Professional Conduct, and blatant misstatements of fact. The Assignment Judge identified about a dozen variations in the evidence when comparing Spina's testimony to others. For example, there were a number of time entry disputes on Spina's bills. This included (a) billing for a four hour conference by Spina with Mr. Albro on February 21, 1998, although Albro's wife testified that Albro did not meet Spina because he was at a church conference all day; (b) on Sunday, June 14, 1998, Spina billed for a two hour conference with Mr. and Mrs. Albro, but Mrs. Albro stated that they never met with Spina because she was working as a nurse that day; (c) on February 23, 1999, Spina's billing records reflected a client conference, but the Albros testified there was no such conference because their grandchild was born that day; and (d) on March 8, 2002, Spina billed 4.25 hours for a court appearance and a telephone conference with the Albros, but the Albros could not have been contacted because they were in Texas attending the funeral of Mrs. Albro's father.

4

The Assignment Judge found Spina withdrew money from Mr. Albro's trust account, which violated the Rules of Professional Conduct.  Model Rules of Prof'l Conduct R. 1.15(a), 1.15(b) and 1.4. More specifically, Spina failed to keep Albro's trust funds separate from her business account, she failed to return Albro's funds when he asked for them, she deposited two of Albro's pension checks directly into her business account, and she failed to keep Albro reasonably informed of the status of his trust  funds.  The Assignment Judge also found that Spina violated New Jersey Court Rules because she failed to maintain an up to date balance of the trust account.

Spina worked with her husband, attorney Patrick Spina, on the Paramus Litigation. Patrick Spina received $65,000 for his services, but he never submitted a bill, and did not maintain records documenting the time he spent on the Paramus Litigation.

 Spina also apparently over billed Albro. The Assignment Judge found that "some, if not all, bills could be considered padded."  For example, Spina billed Albro over $10,000 for 316 pages of deposition transcripts, when those transcripts should have cost approximately $1,500.00.  The Assignment Judge calculated that Spina's billing equated to "1,600 hours on the case, a number that boggles the mind; a total of 160 10-hour days on this case alone."  The Assignment Judge also noted that Spina charged nearly $2,500 for photocopies which was not reflected in any of the bills.  In the end, the Assignment Judge found that Spina's testimony was "sheer fabrication," "lacked specificity," and "does not ring true."

The Assignment Judge also found that Spina agreed to make quarterly estimated tax payments for the funds in Albro's trust account.  In April of 1998, 1999, 2000, and 2001, Albro provided Spina with vouchers for estimated quarterly tax payments on his federal and state

income taxes, with instructions to submit the vouchers along with checks drawn from the trust account in the amount of each voucher.  Spina never followed that instruction.

The Assignment Judge concluded that Spina had committed common law fraud. Noting the five elements of fraud and holding Spina to a higher standard of clear and convincing proof,[2] the Assignment Judge painstakingly analyzed the proofs against the elements and concluded that fraud had been proven.

The Assignment Judge also concluded that Spina had tortiously converted Albro's funds.  The Assignment Judge wrote:

> In the case at hand, Ms. Spina claims to have had a retainer agreement that Mr. Albro signed in December 1996, when she began her representation of him at her firm.  She testified that this agreement permitted her to take her legal funds out of his pension escrow at $250 an hour.  However, as discussed above, this court finds as fact that no such agreement was in place in 1996 and Mr. Albro did not sign a retainer agreement with Ms. Spina until 2002.  Therefore, any funds that were taken from Mr. Albro's pension account were taken as a result of Ms. Spina's tortious conversion of the funds.

(A.R. 57.)   The Assignment Judge found Spina liable for breach of contract.

> Any contract here is oral.  The credible evidence here shows that [Spina] clearly breached said contract.  She stated (orally) Paramus would pay the fees.  The written contract was obtained by fraud. [Spina] used the fraudulent contract and [Albro] suffered damages as a result.

(A.R. 60-61.)   The Assignment Judge found Spina liable for breach of fiduciary duty because Spina, an attorney, dispensed $65,000 to her husband without showing any bills to Albro, and without a written fee arrangement between the husband and Albro.  Thus, the Assignment Judge

---

[2]        The elements of fraud are (1) a material representation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; (5) resulting damages.

concluded Spina had not adequately explained the consent order in the Paramus Litigation to Albro because Albro thought the $165,000 represented the total amount Spina would receive when her intentions were far different.

In the Spina Litigation, the Assignment Judge awarded $260,242.95 in compensatory damages, $211,738.46 for unauthorized withdrawals from an escrow account, $14,950.97 in interest and penalties due to appellant's failure to pay taxes on behalf of Albro, and charges for accounting services needed to address Albro's tax problems caused by appellant's failure to pay taxes on behalf of Albro.  (A.R. 66).  The only issue remaining in the Spina Litigation was the amount of punitive damages, if any.

On November 1, 2007, during the course of the Spina Litigation, Spina filed for bankruptcy.   In late September 2008, Spina was disbarred by the New Jersey Supreme Court for misappropriating client trust funds.  *In re Leonelli-Spina*, 957 A.2d 211 (N.J. 2008).

On October 3, 2008, Judge De La Cruz of the Law Division conducted a punitive damages hearing wherein she took judicial notice of Spina's disbarment. Judge De La Cruz ordered Spina to pay $350,000 in punitive damages, $145,297.85 in attorney's fees, and $16,305.32 in costs to Albro based upon the Spina Litigation.  Judge De La Cruz adopted the summary of the case and the procedural history as laid out by the Assignment Judge in her "thorough decision."

Bankruptcy Matter

On January 15, 2009, Albro filed a motion for summary judgment before the Bankruptcy Court, alleging that the debt was not dischargeable.  Under the Bankruptcy Code, certain types of debt may not be discharged, such as a debt incurred as a result of fraud or defalcation while acting in a fiduciary capacity.  11 U.S.C. § 523(a)(2)(A), (a)(4).  In support of Albro's motion,

7

the Bankruptcy Court reviewed the Assignment Judge's detailed 47 page opinion and Judge De La Cruz's punitive damages award in the Spina Litigation.

Spina argued that the remedy issued in the Spina Litigation was not solely based on fraud and defalcation, and it must be divided into several parts in order to isolate the fraud and defalcation portions from the remainder.  Spina claimed the debt "isn't for one course of conduct" and that a portion of the debt was due to breach of contract. In order to determine which portions of the Judgment are not excepted from discharge, Spina claimed that a full evidentiary hearing was needed (including testimony). Spina claimed that the award of punitive damages was in punishment for her filing for bankruptcy and incorrectly assessed.  Spina argued that her disbarment was entered into evidence when the disbarment was based on matters not before the court in the Spina Litigation.  Spina also noted that an appeal was pending in the Spina Litigation and the Bankruptcy Court should await the Appellate Division's ruling before accepting the Assignment Judge and Judge De La Cruz's decision below.

The Bankruptcy Court granted Albro's motion for summary judgment.  The Bankruptcy Court found that judgment in the Spina Litigation was subject to the doctrine of collateral estoppel.  The Bankruptcy Court found the entire matter was subject to fraud or defalcation under 11 U.S.C. §523(a)(4), (a)(2)(A). Therefore, it concluded that the debt was nondischargeable.

The Bankruptcy Judge relied on Spina's statement of undisputed material facts and the decisions in the Spina Litigation to find that collateral estoppel bound the Bankruptcy Court and that the entire debt was excepted from discharge due to fraud or defalcation.

The Bankruptcy Court rejected segmenting the Spina Litigation decision into various parts because the multiple theories of recovery on which Albro prevailed "seem to interconnect

all aspects of the compensatory damage finding." The Bankruptcy Court relied on the Spina Litigation in finding that the same conduct that supported a finding of breach of contract also supported findings of fraud and tortious conversion, and that "[t]hose [findings] are not severable." The Bankruptcy Court concluded that the punitive damages award was based upon the Law Division's "broad assessment of the conduct overall of Spina, and that the award was well-supported by the trial judge's opinion." (A.R. 350, 360-61.)

As a result of the Bankruptcy Court's decision, Spina filed this appeal. 28 U.S.C. §158(a)(1). Spina claims that the Bankruptcy Court erred by not reviewing the entire record of the trial court, and by not conducting a full evidentiary hearing regarding the final judgment in the Spina Litigation.

## II.      STANDARD OF REVIEW

The factual findings of a bankruptcy court may only be set aside if they are clearly erroneous, and legal conclusions of a bankruptcy court are reviewed de novo. *In re Congoleum Corp.*, 414 B.R. 44, 55 (D.N.J. 2009) (citing *In re Sharon Steel Corp.*, 871 F.2d 1217, 1222-23 (3d Cir. 1989)).

## III.    DISCUSSION

The principle of collateral estoppel, which prohibits the relitigation of issues that have been adjudicated in a prior lawsuit, applies in discharge proceedings in bankruptcy courts. *See Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991); *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997); *Grumbine v. Azeglio* (*In re Azeglio*), 422 B.R. 490 (Bankr. D.N.J. 2010). "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was entered." *Walker v. Horn*, 385 F.3d 321 (3d Cir. 2004) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1982)

9

(internal quotations omitted)).  Under New Jersey law, a party asserting collateral estoppel must satisfy five elements: 1) the issue to be precluded is identical to the issue decided in the prior proceeding; 2) the issue was actually litigated in the prior proceeding; 3) the court in the prior proceeding issued a final judgment on the merits; 4) the determination of the issue was essential to the prior judgment; and 5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.  *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (citations omitted).  Whether these requirements have been met should be made "by the bankruptcy judge after a careful review of the record of the prior case, a hearing at which the parties have the opportunity to offer evidence, and the making of findings of fact and conclusions of law."  *In Re Ross*, 602 F.2d 604, 607 (3d Cir. 1979).  However, when deciding a motion for summary judgment determining whether a debt is dischargeable or not, a bankruptcy court is not required to hold an evidentiary hearing separate from the summary judgment argument. *See, e.g., id.*

Generally, a district court may affirm a bankruptcy court's grant of summary judgment declaring non-dischargeable a debt owed for intentional interference with an economic opportunity, where the debt had been determined by arbitration and confirmed by a state court pursuant to state law. *Corn v. Marks (In re Marks)*, 192 B.R. 379 (E.D. Pa. 1996). However, if there is little or no showing that the debt was incurred by fraud or defalcation while acting in a fiduciary capacity,  a bankruptcy court will refuse to "merely accept the stated legal conclusions of the prior court at face value."  *Penn-Am. Ins. Co. v. Himowitz* (*In re Himowitz*), 162 B.R. 109, 112 (Bankr. D.N.J. 1993).

Under the Bankrutpcy Code, few debts are excepted from discharge, and the party moving for an exception must establish all the elements by a preponderance of the evidence.  *See*

*Groan*, 498 U.S. at 287-88; *Cochran v. Reath* (*In re Reath*), 368 B.R. 415, 421 (Bankr. D.N.J. 2006).   Exceptions to discharge are to be construed strictly against creditors and liberally in favor of debtors.  *See In re Reath*, 368 B.R. at 421; *Ins. Co. of Am.v. Cohn* (*In re Cohn*), 54 F.3d 1108, 1113 (3d Cir. 1995).  In short, a fresh start is only available to the honest but unfortunate debtor. *See Groan*, 498 U.S. at  287; *In re Fegeley*, 118 F.3d 979, 983 (3d Cir. 1997).

When an attorney is the debtor the term defalcation while acting in a fiduciary capacity has a broader scope than fraud.  11 U.S.C. § 523(a)(4).  In order for a debt to be excepted from discharge under this statutory phrase, a creditor must prove the existence of a fiduciary relationship, and that a fraud or defalcation occurred while the debtor acted in a fiduciary capacity.  *In Re Tamis*, 398 B.R. 124, 130 (Bankr. D.N.J. 2008).  "Defalcation refers to a fiduciary's withholding of funds, and applies to conduct that does not rise to the level of fraud, embezzlement, or misappropriation."  *Casini v. Graustein* (*In re Casini*), 307 B.R. 800, 819 (Bankr. D.N.J. 2004).  "A defalcation occurs when a fiduciary fails to account for funds received in his fiduciary capacity."  *Id.* (citation omitted).  An individual must act recklessly when committing a defalcation while acting in a fiduciary capacity in order for the debt to be discharged under this provision.  *In re Tamis*, 398 B.R. at 132.  A debtor's belief that he or she was acting in good faith will not prevent their debt from being excepted from discharge if their behavior demonstrates an extreme departure from the ordinary standards of care.  *See id.* at 133. In this case, the facts found by the Assignment Judge in the Spina Litigation clearly show Spina acted recklessly in the administration of Albro's trust account. Defalcation correctly includes her actions.  *See Goldberg v. New Jersey Lawyers' Fund for Client Protection*, 932 F.2d 273, 278 (3d Cir. 1991).

In addition to defalcation, Spina was found culpable of fraud in the Spina Litigation.  The Assignment Judge considered the standards and applied the facts. (see pages 4-7 of this Opinion) "[F]raud has the same meaning under the bankruptcy code as in the common law of torts." *Araps v. DeBaggis* (*In re DeBaggis*), 247 B.R. 383, 388-89 (Bankr. D.N.J. 1999) (relying on *Field v. Mans*, 516 U.S. 59, 69-70 (1995)).  The Assignment Judge concluded the facts show actual fraud, and the Bankruptcy Court found that all the factual findings in the Spina Litigation arose from Spina's fraud or defalcation.

In light of the thorough opinion of the Assignment Judge in the Spina Litigation, her conclusions on fraud are clear. The Bankruptcy Judge correctly relied upon them. In short, when the record is so well developed, it would be impractical for a very busy Bankruptcy Judge to re-conduct a trial on fraud.

Spina argued that a full evidentiary hearing is necessary to determine which parts of the Judgment in the Spina Litigation may be dischargeable, i.e. breach of contract or negligence. Spina points out that the awards never equated damages to a specific cause of action.  The Bankruptcy Judge had it right.  As the Bankruptcy Judge found, the Spina Litigation awards emanated from her fraudulent conduct or her defalcation of funds entrusted to her. There is no reason to re-try the Spina Litigation in order to recalculate damages in a manner more amenable to an errant attorney.

Spina agues that the Bankruptcy Court should await an Appellate Division ruling in the Spina Litigation because it may be different.  In the event this occurs, Spina may apply by motion for relief.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.